UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

| | |
|---|---|
| CECIL BOGGS,<br><br>    Plaintiff,<br><br>V.<br><br>JIM STEVENS, *Individually, and in his Official Capacity as a Jenkins Police Officer*,<br><br>    Defendant. | CIVIL NO. 7:16-CV-208-KKC<br><br><u>OPINION AND ORDER</u> |

\*\*\* \*\*\* \*\*\*

This matter is before the Court pursuant to Defendant Jim Stevens' Motion for Summary Judgment (DE 31) filed on November 27, 2017, and his Motion to Strike Supplemental Disclosures accompanying Plaintiff Cecil Boggs' response in opposition to summary judgment (DE 40). For the following reasons, Stevens' motion for summary judgment (DE 31) is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is **GRANTED** as to Plaintiff's claims relying solely on supervisory liability under 42 U.S.C. § 1983. Summary judgment (DE 31) is **DENIED** as to all other claims. Stevens' Motion to Strike Supplemental Disclosures (DE 40) is **DENIED** as **MOOT**. The Court will entertain motions for qualified immunity following the Plaintiff's presentation of his case-in-chief.

## I. INTRODUCTION

This case involves the alleged use of excessive force during an arrest in violation of state and federal law. Plaintiff Boggs originally filed this action in Letcher Circuit Court on September 9, 2016. (DE 1-1 at 2). In his original complaint, Boggs filed suit against Jim Stevens, individually and in his official capacity as a Jenkins City Police Officer, and Matt

1

Martin, individually and in his official capacity as a Kentucky State Police Officer. *Id.* After defendants removed to this Court (DE 1), Boggs filed an amended complaint in which Jim Stevens was the only remaining defendant. (DE 14).

Boggs' most recent complaint alleges that on September 11, 2015, Stevens arrested him in Letcher County, Kentucky. (DE 14 at 1). The authorities initially arrived at Boggs' home in response to a domestic violence complaint lodged by Boggs' wife. *Id.* Initial reports indicated that there may have been a weapon involved. (DE 30 at 6-7; DE 39 at 2).

When Boggs learned that there were multiple officers outside his home, including Stevens and Martin, Boggs came out onto his second-story porch. (DE 39 at 1). Stevens directed Boggs to leave the porch and come down to the ground level. *Id.* Stevens contends that initially Boggs did not know what was going on, and "he was verbally non compliant [sic], verbally loud." (DE 30 at 6). After he issued repeated verbal orders, Stevens states that Boggs came out and got on the ground. *Id.* Stevens then began handcuffing Boggs, who was lying prone on the ground. *Id.* It is undisputed that Boggs attempted to keep his head off the ground when laying facedown. Boggs argues he did this to keep his face out of the gravel below. (DE 29 at 82). Stevens said he thought that by raising his head, Boggs was attempting to get up. (DE 30 at 6).

Stevens asserts that because Boggs was trying to resist and get off the ground, he employed a pressure technique behind Boggs' ear called the "mastoid" process, which enabled him to handcuff Boggs. (DE 30 at 6-7, 14). Boggs, on the other hand, alleges that he complied with all of the officers' requests, and that his head was gratuitously slammed into the ground two or three times causing injury. (DE 29 at 72).

Stevens alleges that he left the handcuffed Boggs with Deputy Chief Davis, and went an unspecified distance away to interview Boggs' wife about her domestic violence complaint. (DE 30 at 7). During this time, Boggs complains that Kentucky State Police Officer Martin

threw Boggs to the ground and repeatedly delivered blows to Boggs' ribs with his flashlight resulting in further injuries. (DE 29 at 74). Boggs admits that Stevens was not around when he was thrown to the ground by Officer Martin. (DE 29 at 46). Boggs further admits that Stevens eventually ran over in an attempt to restrain Officer Martin. (DE 29 at 79). Medical records from an emergency room visit following the arrest find Boggs to have suspected hairline rib fractures, a displaced nasal fracture, swelling around the nose area, and blood in the sinuses and nasal cavity. (DE 37-1).

Plaintiff Boggs' amended complaint alleges violations of state tort law, federal civil rights claims through 42 U.S.C. § 1983, and that his Fourth Amendment right against excessive force was violated during the arrest. (DE 14). Officer Stevens, the only remaining defendant in the case, now moves the Court to dismiss Boggs' claims through summary judgment, asserting among other things that he is entitled to qualified immunity on all claims. (DE 31). In his response to Stevens' motion for summary judgment, Boggs has included two affidavits—one of a responding officer, former Deputy Chief Crystal Davis, and a civilian ride-along who witnessed the arrest, Jessica Hicks. (DE 39). Stevens moves the Court to strike the affidavits from the record. (DE 40).

## II. ANALYSIS

a. **Legal standards**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden and must identify "those portions of the pleadings...which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citation omitted).

Once the movant meets the initial burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). When, as here, a

defendant moves for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In this Court's consideration of the motion, "the evidence should be viewed in the light most favorable to the non-moving party." *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 255).

When the motion for summary judgment is based on the defense of qualified immunity, the analysis is somewhat altered, and the existence of a disputed, material fact does not *necessarily* preclude summary judgment. *See Woosley v. City of Paris,* 591 F.Supp.2d 913, 918 (E.D. Ky. Dec. 2, 2008). In such a case, even if there is a material fact in dispute, summary judgment is appropriate if the Court finds that—viewing the facts in the light most favorable to the plaintiff—the plaintiff has failed to establish a violation of a clearly established constitutional right. *See id.*; *see also Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 816 (2009).

**b. Claims Premised on Supervisory Liability**

At the outset, it is important to note the legal scope of Officer Stevens' liability. Boggs' amended complaint alleges that "the Defendant used excessive force during the arrest[,] causing him significant injury, which included a broken nose, broken ribs and lacerations to his face…." (DE 14 at 1). Boggs claims that Officer Stevens is responsible for the force used by Officer Martin, since Stevens had taken Boggs into custody and was responsible for protecting him. (DE 39 at 5). In support of his position, Boggs cites a case from the United States Court of Appeals for the Sixth Circuit that discusses supervisory liability under § 1983. (DE 39 at 5) (citing *Combs v. Wilkinson,* 315 F.3d 548 (6th Cir. 2002).

To prove such liability, "the plaintiff must demonstrate[] that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a

4

minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Combs,* 315 F.3d at 558 (internal citations omitted). Other than passing references to the defendant as "Chief Jim Stevens," the plaintiff does not explain the supervisory role that Jenkins Police Officer Stevens had over Kentucky State Police Officer Martin. Further, other than a passing argument that Stevens' actions during handcuffing were sufficient to authorize Martin's actions roughly ten minutes after handcuffing (DE 39 at 5; DE 29 at 45), Boggs provides no proof of encouragement or authorization by Stevens. Quite the opposite, even Boggs admits that Stevens was not in the immediate vicinity when Martin began beating him, and that Stevens was the officer who eventually intervened to stop the beating. (DE 29 at 46, 79). Even assuming Officer Martin's use of force, no reasonable jury could find that Stevens "implicitly authorized, approved or knowingly acquiesced" in Martin's allegedly unconstitutional conduct. *See id.* To the extent Boggs has pleaded claims based solely on supervisory liability, those claims are dismissed.

**c. Qualified Immunity and Federal Claims**

Defendant Stevens has raised the issue of qualified immunity. (DE 31 at 6). Qualified immunity shields government officials performing discretionary functions from "liability for civil damages insofar as their conduct does not violate clearly established…constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). The question of whether qualified immunity shields a particular government official is one of law, and is to be determined by the district Judge. *See Heflin v. Stewart County, Tenn.,* 958 F.2d 709, 717 (6th Cir. 1992). Thus, where the facts shown by the plaintiff do not make out a clearly established constitutional violation, qualified immunity protects the government official from trial. *See Pearson,* 555 U.S. at 231-232. The plaintiff bears the burden of establishing that the defendant is not entitled to the defense, but the

facts are viewed in the light most favorable to the purportedly injured party. *See Malory v. Whiting,* 489 Fed.Appx. 78, 82 (6th Cir. 2012).

Here, Boggs' claimed constitutional violation is excessive force used during his arrest, infringing upon rights guaranteed him by the Fourth Amendment. (DE 14). Claims of excessive force during arrest are analyzed under the objective-reasonableness standard. *See Fox v. DeSoto,* 489 F.3d 227, 236 (6th Cir. 2007). "[T]he question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989) (internal citations omitted). Proper application of the test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

Overall, the Court finds the analysis in this case to be a close call, but notes that one factor relevant to reasonableness clearly favors the officer. Originally, the officers were dispatched to Boggs' home to respond to a complaint regarding domestic violence. (DE 30 at 6; DE 39 at 1). Initial reports indicated that there may have been a weapon involved. (DE 30 at 6-7; DE 39 at 2). Given the nature of the alleged crime, the intensity of responding officers is reasonably heightened in such a situation.

But other factors within the reasonableness analysis are not as clear. Officer Stevens admits that after he repeatedly ordered Boggs to come out of the house and get on the ground, Boggs eventually complied, placing his hands in the air and falling to the ground. (DE 30 at 6, 15; DE 29 at 112). Once Boggs was on the ground, Officer Stevens alleges that Boggs tried to get up and resist being cuffed. Because Stevens thought Boggs was resisting, Stevens argues he reasonably used a "mastoid process," in order to apply handcuffs. (DE 30 at 6-7,

14). Boggs, on the other hand, alleges that he complied with the requests of the officers, and that, despite compliance, his head was gratuitously slammed into the ground two or three times resulting in injury. (DE 29 at 72).

On Boggs' version of the story, he was neither a threat nor actively resisting when he sustained injuries to the face and nose. In support of his position, Boggs points the Court to Stevens' deposition testimony, in which Stevens admits that Boggs eventually put his hands in the air (DE 30 at 14), eventually complied with orders to get on the ground (DE 30 at 6), and Stevens admits to then pushing on the gap behind Boggs' ear (DE 30 at 15). For qualified immunity purposes, it is clear that a gratuitous blow to a neutralized or compliant suspect, and in this case one with the alleged force to fracture a nose, is unreasonable and clearly established as being so. *See e.g., Baker v. City of Hamilton, Ohio,* 471 F.3d 601, 607 (6th Cir. 2006) (ruling an excessive force claim could reach a jury when the plaintiff allegedly suffered a blow to the head with an asp after he raised his hands in the surrender position); *see also Malory v. Whiting,* 489 Fed.Appx. 78, 85 (6th Cir. 2012) ("[O]ur cases have framed a suspect's right to be free from excessive force as 'a clearly established legal norm precluding the use of violent physical force against a criminal suspect *who already has been subdued and does not present a danger to himself or others'"); see also Darnell v. Caver,* 1998 WL 416000 (6th Cir. 1998) (unpublished) (finding that after suspect was thrown to ground, it was unreasonable for officer to lift suspect's head and let it drop to pavement). On Boggs' narrative, he received gratuitous blows to the head after he had surrendered and at a time in which he was compliant. Viewing the evidence in a light most favorable to Boggs, he has shown a violation of a clearly established constitutional right at this procedural stage. *See Pearson,* 555 U.S. at 231-232.

Further, the Court finds that a reasonable jury could conclude that Boggs was neither a threat nor resisting arrest at the time of the injuries to his face, and thus genuine issues of

material fact preclude the Court from determining that Officer Stevens' actions were objectively reasonable as a matter of law. Boggs maintains that he complied with Stevens' requests and had given himself up prior to the alleged blows. (DE 29 at 72; DE 39 at 1-2). Boggs submitted medical records showing him to have a displaced nasal fracture, swelling around the nose area, and blood in the sinuses and nasal cavity following the arrest. (DE 37-1 at 4). The Court finds that Boggs has sufficiently shown that factual questions exist both as to the necessity of force, and the amount used. Arguments as to the reasonableness of Stevens' actions should be made to the jury.

Although a jury may ultimately find differently, Boggs has sufficiently pleaded a violation of a clearly established constitutional right at this procedural stage. Boggs has also shown a sufficient dispute of facts that are material to the reasonableness analysis—namely whether he posed a threat or actively resisted arrest—to preclude summary judgment on his federal claims.

### d. Qualified Immunity and State Claims

Plaintiff Boggs also brings state-law assault and battery claims against Stevens. (DE 14 at 1-2). In response, Stevens argues that he is entitled to qualified immunity under Kentucky law. (DE 31-1 at 8-9). While Kentucky law analyzes qualified immunity under a slightly different analysis than its federal counterpart, the result remains the same.

Under Kentucky law, public employees, including police officers, enjoy qualified immunity for (1) discretionary acts or functions, (2) performed in good faith; and (3) within the scope of the employee's authority. *See Yanero v. Davis,* 65 S.W.3d 510, 522 (2001). Importantly, "in the context of qualified official immunity, 'bad faith' can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, *i.e.*, objective unreasonableness…." *Id.* at 523; *see also See Woodcock*

*v. City of Bowling Green,* 679 Fed.Appx. 419, 425 (6th Cir. 2017) ("And courts have held that 'this inquiry tracks the inquiry for objective reasonableness and qualified immunity'") (citations omitted). Given that a reasonable jury could conclude that Officer Stevens acted in bad faith by violating a clearly established constitutional right—a gratuitous blow to Boggs in violation of the Fourth Amendment—Stevens is not entitled to qualified immunity under Kentucky law at this procedural stage.

As to the specific tort claims, "[a]ssault is a tort which merely requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching." *Banks v. Fritsch,* 39 S.W.3d 474, 480 (Ky.Ct.App. 2001). However, Kentucky has codified a specific privilege allowing police officers to use force in certain situations. Under Kentucky Revised Statute § 503.090, a police officer is privileged to use force in effecting an arrest when he/she:

> (a) Believes that such force is necessary to effect the arrest; (b) Makes known the purpose of the arrest or believes that it is otherwise known or cannot reasonably be made known to the person to be arrested; and (c) Believes the arrest to be lawful.

KRS § 503.090. As discussed above, if the facts are taken in a light most favorable to Boggs, a reasonable jury could find that Officer Stevens did not believe that his use of force was necessary to arrest a compliant Boggs. As such, summary judgment on Boggs' state law claims is improper.

### e. Motion to Strike (DE 40)

In ruling on summary judgment, the Court did not consider the affidavits filed concurrently with plaintiff Boggs' response in opposition to summary judgment. *See* (DE 39-1, 39-2). Therefore, the Court denies defendant Stevens' motion to strike (DE 40) the affidavits from Boggs' response as moot. The Court acknowledges, however, that use of the

affidavits at trial and the scope of any potential testimony by the affiants is an issue to be taken up prior to trial.

### III. CONCLUSION

For the foregoing reasons, the Court **HEREBY ORDERS** as follows:

(1) Defendant's motion for summary judgment (DE 31) is **GRANTED** as to plaintiff's claims relying solely on supervisory liability under 42 U.S.C. § 1983;

(2) Defendant's motion for summary judgment (DE 31) is **DENIED** as to all other claims;

(3) Defendant's motion to strike supplemental disclosures (DE 40) is **DENIED AS MOOT**;

(4) The Court will entertain motions for qualified immunity following the plaintiff's presentation of his case-in-chief.

Dated February 6, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY